RECORD NUMBER: 13-2170

# United States Court of Appeals

## *for the*

# Fourth Circuit

---

THE GREENVILLE COUNTY REPUBLICAN PARTY
EXECUTIVE COMMITTEE, et al.,

*Appellants,*

– v. –

BILLY WAY, JR., in his official capacity as the Chairman of the
South Carolina State Election Commission, et al.,

*Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT GREENVILLE

# OPENING BRIEF OF APPELLANTS

SAMUEL D. HARMS, III
HARMS LAW FIRM, PA
33 Market Point Drive
Greenville, SC 29607
(864) 277-0102

*Counsel for Appellants*

CP COUNSEL PRESS • VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-2170__        Caption: __Greenville Rep Party Exec Comm v. Greenville Cnty Election Comm__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__William Mitchell_____
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                          ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
         N/A

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐YES ☑NO
        If yes, identify all such owners:
         N/A

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

    N/A

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

    N/A

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

    N/A

Signature: s/ Samuel D. Harms _____    Date: _____10/08/13_____

Counsel for: William Mitchell _____

## CERTIFICATE OF SERVICE
*****************************

I certify that on _____10/08/13_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

See attached Certificate of Service.

s/ Samuel D. Harms _____        _____10/08/13_____
(signature)                                         (date)

## CERTIFICATE OF SERVICE

I certify that on October 8, 2013 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Mr. Fletcher N. Smith, Jr.
P. O. Box 10496 F.S.
Greenville, SC 29603-0000

Mr. Henry Dargan McMaster, Attorney General
OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA
Rembert C. Dennis Office Building
1000 Assembly Street
P. O. Box 11549
Columbia, SC 29211-1549

Alan Wilson
OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA
Rembert C. Dennis Office Building
1000 Assembly Street
P. O. Box 11549
Columbia, SC 29211-1549

J. C. Nicholson, III
OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA
Rembert C. Dennis Office Building
1000 Assembly Street
P. O. Box 11549
Columbia, SC 29211-1549

HARMS LAW FIRM, P.A.

October 8, 2013                    By: _____

33 Market Point Drive
Greenville, SC 29607
(864) 277-0102

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2170__      Caption: __Greenville Rep Party Exec Comm v. Greenville Cnty Election Comm__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__The Greenville County Republican Party Executive Committee__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                        ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
         N/A

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐ YES ☑ NO
        If yes, identify all such owners:
         N/A

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
       If yes, identify entity and nature of interest:

       N/A

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

       N/A

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
       If yes, identify any trustee and the members of any creditors' committee:

       N/A

Signature: s/ Samuel D. Harms _____    Date: _____10/08/13_____

Counsel for: Greenville County Republican Party _____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____10/08/13_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

See attached Certificate of Service.

s/ Samuel D. Harms _____                _____10/08/13_____
       (signature)                                                    (date)

## CERTIFICATE OF SERVICE

I certify that on October 8, 2013 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Mr. Fletcher N. Smith, Jr.
P. O. Box 10496 F.S.
Greenville, SC 29603-0000

Mr. Henry Dargan McMaster, Attorney General
OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA
Rembert C. Dennis Office Building
1000 Assembly Street
P. O. Box 11549
Columbia, SC 29211-1549

Alan Wilson
OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA
Rembert C. Dennis Office Building
1000 Assembly Street
P. O. Box 11549
Columbia, SC 29211-1549

J. C. Nicholson, III
OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA
Rembert C. Dennis Office Building
1000 Assembly Street
P. O. Box 11549
Columbia, SC 29211-1549

HARMS LAW FIRM, P.A.

October 8, 2013                              By: _____

33 Market Point Drive
Greenville, SC 29607
(864) 277-0102

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ......................................................................... iv

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION .................................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................... 2

STATEMENT OF THE CASE.................................................................... 3

    Statement of the Case ......................................................................... 3

    Statement of Facts.............................................................................. 8

    A. The June 14, 2011, City of Greenville Republican Party
       Municipal Primary and Previous Municipal Primaries.................. 8

    B. Democrats Vote in the Greenville County Republican Party's
       Primary ........................................................................................ 10

    C. The Financial Disclosure Statements of the Greenville County
       Republican Party ......................................................................... 15

    D. Facts Regarding William Mitchell ............................................... 16

SUMMARY OF ARGUMENT .................................................................. 16

ARGUMENT .............................................................................................. 18

STANDARD OF REVIEW ........................................................................ 18

    A. Standard of Review for Reviewing the District Court's Grant of
       Summary Judgment ...................................................................... 18

i

B. Standard of Review for Reviewing the District Court's Dismissal for Lack of Standing ..................................................... 18

DISCUSSION OF ISSUES.......................................................................... 18

    A. The South Carolina Open Primary System in General ................. 18

    B. The Open Primary System for a Municipal Primary.................... 19

    C. The Mandatory Open Primary for the City of Greenville Municipal Primary ....................................................................... 22

    D. The Greenville County Republican Party Declares the Municipal Office Nominees and the South Carolina Republican Party cannot Overturn the Decision of the Greenville County Republican Party ............................................ 23

    E. Nomination for County Offices by the Greenville County Republican Party for Unopposed Candidates............................... 24

    F. Nomination for County Offices by the Greenville County Republican Party by the Primary Method or the Convention Method....................................................................................... 25

    G. Political Parties cannot Nominate by Petition ............................. 28

    H. Case Law on the Constitutionality of Open Primaries ................. 30

    I. Case Law on the Constitutional Rights of Political Parties ........... 31

ISSUE ONE: South Carolina's Mandatory Open Primary for Municipal Offices is Unconstitutional because it Violates the Greenville County Republican Party's Right to the Freedom of Political Association .............. 35

ISSUE TWO: It is Unconstitutional to Compel the Greenville County Republican Party to Conduct, Pay for, and Certify the Results of an Open Primary as the State Action Violates the Greenville County Republican Party's Right to the Freedom of Political Association .............. 37

ISSUE THREE: S.C. Code § 7-11-30 is Unconstitutional because it Violates the Greenville County Republican Party's Right to the Freedom of Political Association ................................................................. 39

ISSUE FOUR: S.C. Code § 7-11-30 is Unconstitutional Because it Violates the Greenville County Republican Party's Rights Under the Equal Protection Clause ............................................................... 43

ISSUE FIVE: The Election Laws Violate William Mitchell's Right to the Equal Protection of the Laws ............................................... 47

ISSUE SIX: The Greenville County Republican Party has Standing to Assert Its Right to the Equal Protection of the Laws and Its Right to the Freedom of Political Association .............................................. 49

ISSUE SEVEN: William Mitchell has Standing to Assert His Right to the Equal Protection of the Laws ............................................... 63

CONCLUSION ........................................................................... 64

REQUEST FOR ORAL ARGUMENT ...................................... 65

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Ahmed v. United States,*
    30 F.3d 514 (4th Cir.1994) ................................................................ 18

*Brown v. Town of Cary,*
    706 F.3d 294 (4th Cir. 2013) .......................................................... 18

*Bush v. Gore,*
    531 U.S. 98 (2000) .............................................................................. 48

*Calif. Democratic Party v. Jones,*
    530 U.S. 567 (2000) ........................................................ 31, 32, 34, 42

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985) ........................................................................... 44

*City of New Orleans v. Dukes,*
    427 U.S. 297 (1976) ........................................................................... 44

*Clingman v. Beaver,*
    544 U.S. 581 (2005) ..................................................................... 31, 32

*Democratic Party v. Wisconsin ex rel. La Follette,*
    450 U.S. 107 (1981) ................................................................. *passim*

*Eu v. San Francisco Democratic Central Committee,*
    489 U.S. 214 (1989) ................................................................. *passim*

*Gray v. Sanders,*
    372 U.S. 368 (1963) ........................................................................... 47

*Jennings v. Univ. of N.C.,*
    482 F.3d 686 (4th Cir. 2007) .......................................................... 18

*Kramer v. Union Free School District No. 15,*
    395 U.S. 621 (1969) ........................................................................... 48

*Marshall v. Meadows*,
    105 F.3d 904 (4th Cir. 1997) ........................................... 18, 49, 56, 57

*Miller v. Brown (I)*,
    462 F.3d 312 (4th Cir. 2006) ...................................................... *passim*

*Miller v. Brown (II)*,
    503 F.3d 360 (4th Cir. 2007) ...................................................... *passim*

*Reynolds v. Sims,*
    377 U.S. 533 (1964)..................................................................... 47, 48

*Tashjian v. Republican Party of Connecticut*,
    479 U.S. 208 (1986)..................................................................... 33, 42

*Wash. State Grange v. Wash. State Republican Party*,
    522 U.S. 442 (2008)........................................................................... 32

*Webster v. U.S. Dep't of Agric.*,
    685 F.3d 411 (4th Cir. 2012) ............................................................ 18

**Rules and Statutes**

28 U.S.C. § 1291 ........................................................................................ 1

28 U.S.C. § 1331 ........................................................................................ 1

28 U.S.C. § 1367 ........................................................................................ 1

28 U.S.C §§ 2201-2202 ............................................................................. 1

42 U.S.C. § 1983 ........................................................................................ 1

Fed.R.Civ.P. 24 ......................................................................................... 4

S.C. Code § 5-15-80............................................................................. *passim*

S.C. Code § 7-5-340........................................................................ 19, 36, 38

v

S.C. Code § 7-5-420...................................................................... 19, 20, 36, 38

S.C. Code § 7-5-610...................................................................... 19, 20, 36, 38

S.C. Code § 7-5-630...................................................................... 19, 21, 36, 38

S.C. Code § 7-11-10.................................................................................. 28, 29

S.C. Code § 7-11-20.............................................................................. 58, 59, 60

S.C. Code § 7-11-30................................................................................. *passim*

S.C. Code § 7-11-70.......................................................................................... 29

S.C. Code § 7-11-90...................................................................................... 24, 25

S.C. Code § 7-13-15................................................................................. *passim*

S.C. Code § 7-13-15(A)(1) ............................................................................... 22

S.C. Code § 7-15-320................................................................... 19, 21, 36, 38

S.C. Code § 7-15-395.......................................................................................... 23

S.C. Code § 7-17-530...................................................................................... 26, 55

S.C. Code § 7-25-190.......................................................................................... 59

S.C. Code § 33-1-101................................................................................ 44, 45, 46

S.C. Code § 33-2-106.......................................................................................... 45

S.C. Code § 33-31-206........................................................................................ 45

S.C. Code § 33-41-10.......................................................................................... 45

S.C. Code § 33-41-510(8).................................................................................. 45

S.C. Code § 33-44-103........................................................................................ 44

S.C. Code § 33-44-404(a)(2) ........................................................ 44

**Constitutional Amendments**

First Amendment.................................................................*passim*

Eleventh Amendment ...................................................................... 4

Fourteenth Amendment ..........................................................*passim*

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

This case is a challenge to the constitutionality of various election laws of the State of South Carolina by the Greenville County Republican Party Executive Committee ("Greenville County Republican Party") and William "Billy" Mitchell ("Mitchell"). The case was filed in the United States District Court for the District of South Carolina (the "District Court"), JA28, which had proper subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331, 28 U.S.C §§ 2201-2202, 28 U.S.C. § 1367, and 42 U.S.C. § 1983.

The District Court entered its final Opinion and Order in this case on August 30, 2013. JA716. The District Court entered a Judgment on September 6, 2013. JA738. Twelve days later, on September 18, 2013, the Appellants, the Greenville County Republican Party and William Mitchell timely filed their notice of appeal. JA739. The Opinion and Order was a "final decision[] of the district court," and therefore, this Court has proper appellate jurisdiction pursuant to 28 U.S.C. § 1291.

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

This appeal presents seven discrete issues:

(1) Is South Carolina's mandatory open primary for municipal offices unconstitutional because it violates the Greenville County Republican Party's right to the freedom of political association?

(2) Is it unconstitutional to compel the Greenville County Republican Party to conduct, pay for, and certify the results of an open primary as the state action violates the Greenville County Republican Party's right to the freedom of political association?

(3) Is S.C. Code § 7-11-30 unconstitutional because it violates the Greenville County Republican Party's right to the freedom of political association?

(4) Is S.C. Code § 7-11-30 unconstitutional because it violates the Greenville County Republican Party's rights under the Equal Protection Clause?

(5) Do the election laws violate William Mitchell's right to the equal protection of the laws?

(6) Does the Greenville County Republican Party have standing to assert its right to the equal protection of the laws and its right to the freedom of political association?

(7) Does William Mitchell have standing to assert his right to the equal protection of the laws?

2

## STATEMENT OF THE CASE

**Statement of the Case**

This case is a challenge to the constitutionality of various election laws of the State of South Carolina that have the effect of requiring the Greenville County Republican Party Executive Committee ("Greenville County Republican Party") to nominate candidates using the open primary method. In addition, William "Billy" Mitchell ("Mitchell") challenges the constitutionality of various election laws that treat electors voting in a partisan municipal primary differently than electors voting in a partisan county-wide or state-wide primary. The original complaint was filed on June 1, 2010, by the Greenville County Republican Party, the South Carolina Republican Party, Patrick B. Haddon, in his official capacity as the Chairman of the Greenville County Republican Party, and William Mitchell. JA28. The original Defendants were the State of South Carolina and John H. Hudgens, III, in his official capacity as the Chairman of the South Carolina State Election Commission. The complaint requested that the District Court issue a declaratory judgment, and it requested a permanent injunction against the Defendants.

The Defendants filed an answer on July 19, 2010. JA50.  On February 4, 2011, the Defendant-Intervenors filed a motion for intervention pursuant

to Rule 24 of the Federal Rules of Civil Procedure and the motion was granted on March 4, 2011. On February 10, 2011, the Plaintiffs and Defendants filed cross-motions for summary judgment as to the Plaintiffs' facial challenges to the constitutionality of the election laws. JA59, 68. The State of South Carolina, on February 10, 2011, also filed a motion to dismiss arguing that the claims against the State were barred by the State of South Carolina's inherent sovereign immunity and immunity from suit under the Eleventh Amendment to the United States Constitution.

The District Court heard oral arguments from all of the parties on March 10, 2011. At the oral arguments, the State of South Carolina asked the court to not rule on the State's motion to dismiss so that it could continue to participate in the lawsuit. JA131. The court issued its initial Opinion and Order in this case on March 30, 2011. JA239. The court granted the Defendants' motion for summary judgment as to the Plaintiffs' facial challenges to the constitutionality of the election laws. Also, the court dismissed the State's motion to dismiss without prejudice. Finally, the District Court denied the Plaintiffs' motion for summary judgment as to the facial challenges to the constitutionality of the election laws.

 On April 27, 2011, the original Plaintiffs timely filed a motion to alter or amend the Opinion and Order under Rule 59 of the Federal Rules of

4

Civil Procedure. JA264. The District Court did not hear oral arguments on the Plaintiffs' motion. On July 18, 2011, the District Court denied the Plaintiffs' motion to alter or amend the judgment of the court; however, the court made significant clarifications and corrections to its previous order. JA308. The court, in its July 18, 2011, Opinion and Order, clarified that it had only granted summary judgment to the Defendants on the facial claims and that it had not made any rulings on the Plaintiffs' as-applied challenges to the constitutionality of the elections laws. The court also reopened discovery. JA315.

On May 19, 2011, the Plaintiffs filed a motion to substitute Betty S. Poe for Patrick B. Haddon because she was the newly elected Chairman of the Greenville County Republican Party. JA302. The court issued a consent order allowing the substitution on May 20, 2011. JA304. The Plaintiffs filed a motion to amend the complaint on December 15, 2011, and the court granted the motion on January 3, 2012. JA316. The amended complaint was filed on January 6, 2012. JA318. The amended complaint added the Greenville County Election Commission, the Greenville County Board of Registration, and the City of Greenville Municipal Election Commission as Defendants. Also, the amended complaint did not name the State of South

Carolina as a Defendant, and this had the effect of dismissing the State of South Carolina from the case.

On February 29, 2012, the City of Greenville Municipal Election Commission filed a motion to dismiss. The District Court heard oral arguments on the motion to dismiss on August 8, 2012. On August 22, 2012, the court signed a consent order and granted the City of Greenville Municipal Election Commission's motion to dismiss. JA367.

On May 3, 2013, the court issued a notice setting a bench trial for August 21, 2013. Billy Way, Jr., became the new Chairman of the South Carolina State Election Commission, and on May 9, 2013 the Plaintiffs filed a motion to substitute the new chairman for John H. Hudgens, III. JA373. The District Court issued an order allowing the substitution on May 14, 2013. JA375.

On June 7, 2013, the South Carolina Republican Party filed a stipulation dismissing its claims in this matter without prejudice. JA379. The Defendant-Intervenors then filed a motion to dismiss on July 2, 2013, alleging that the Greenville County Republican Party and William Mitchell lacked standing to bring the lawsuit. JA381. On July 3, 2013, the Defendants filed a motion for summary judgment alleging that the Greenville County Republican Party and William Mitchell lacked standing to bring the lawsuit.

6

JA499, 509. The Greenville County Republican Party also filed a motion for summary judgment on July 3, 2013, alleging that various election laws cited in the amended complaint were unconstitutional on their face. JA521.

A bench trial was scheduled for August 21, 2013. At the beginning of the trial, the District Court heard oral arguments on the Defendants and Defendant-Intervenors' motions for summary judgment and motion to dismiss for lack of standing. At the conclusion of the oral arguments, the District Court issued a ruling from the bench dismissing the case for lack of standing with a formal written order to follow. JA715. On August 30, 2013, the District Court filed an Opinion and Order dismissing the action for lack of standing. JA716.

The Court entered judgment on September 6, 2013. JA738. The Greenville County Republican Party and William Mitchell filed a notice of appeal on September 18, 2013. JA739. At the bench trial and at the time of the dismissal of the case, there was a vacancy in the position of Chairman of the Greenville County Republican Party because Betty S. Poe had resigned from that position prior to the bench trial. After the filing of the appeal, the United States Court of Appeals for the Fourth Circuit, on October 16, 2013, granted The Columbia Tea Party, Inc.'s motion to dismiss itself as a party to the appeal. Doc. No. 21.

**Statement of Facts**

**A. The June 14, 2011, City of Greenville Republican Party Municipal Primary and Previous Municipal Primaries.**

On June 14, 2011, the Greenville County Republican Party Executive Committee conducted and paid for the 2011 City of Greenville Republican Party municipal primary. JA576-577, 583-584. The Greenville County Republican Party Executive Committee conducted the primary and it paid for the ballots, instructional materials, and absentee ballots. *Id.* The Greenville County Republican Party Executive Committee recruited volunteers to conduct the primary and kept the precinct polling stations open from 7 a.m. to 7 p.m. and counted the ballots after the polls closed at 7 p.m. *Id.* The Greenville County Republican Party Executive Committee declared and certified the winners of the primary for each office to the City of Greenville municipal election commission. *Id.* In the past, the Greenville County Republican Party has paid for the City of Greenville municipal primary. JA63-64, 576-577, 583-584. In the future, the Greenville County Republican Party Executive Committee will continue to conduct and pay for the City of Greenville Republican Party municipal primary. *Id.*

The South Carolina Republican Party *did not* conduct or pay for the 2011 City of Greenville Republican Party municipal primary, or for any past municipal primary. *Id.* The State Election Commission and Greenville

8

County Election Commission *did not* conduct or pay for the 2011 municipal primary, or any past municipal primary. *Id.* The City of Greenville *did not* pay for the 2011 municipal primary, or any past municipal primary. *Id.* The South Carolina Republican Party *did not* certify the nominees of the party after the 2011 municipal primary, or any past municipal primary. *Id.* The State and County Election Commissions *did not* certify the nominees after the 2011 municipal primary, or any past municipal primary. *Id.* The City of Greenville *did not* certify the nominees after the 2011 municipal primary, or any past municipal primary. *Id.*

Before the 2011 municipal primary, and in past municipal primaries, the Greenville County Election Commission and Greenville County Board of Registration delivered to the Greenville County Republican Party Executive Committee the official list of people eligible to vote in the municipal primary election. *Id.* The official list contained the names of electors who were not affiliated with the Republican Party, or worse, were rivals to the Party. *Id.*

The forced association of the Greenville County Republican Party Executive Committee with Democrats, and other rivals of the Greenville County Republican Party Executive Committee violates the constitutional rights of the Greenville County Republican Party Executive Committee.

9

JA576-577, 583-584. The Greenville County Republican Party Executive Committee desires to have a municipal primary, and other county-wide primaries, in which only Republicans can vote in the primary. *Id.* The Greenville County Republican Party Executive Committee desires to conduct primaries that comply with its constitutional rights to the freedom of political association and the equal protection of the laws under the First and Fourteenth Amendments to the United States Constitution. *Id.*

**B. Democrats Vote in the Greenville County Republican Party's Primary.**

Democrats, and other political rivals of the Greenville County Republican Party, voted in the June 14, 2011, municipal primary conducted and paid for by the Greenville County Republican Party. JA576-577, 583-584. Before the 2011 municipal primary, and in past municipal primaries, the Greenville County Election Commission and Greenville County Board of Registration delivered to the Greenville County Republican Party Executive Committee the official list of people eligible to vote in the municipal primary election. JA63-64, 576-577, 583-584.

On municipal primary day, state law requires the Greenville County Republican Party volunteers conducting the primary to completely fill in a Scantron oval next to the voter's name, on the official list of voters, when he or she receives a ballot to vote in the Republican Party municipal primary to

10

prevent people from voting twice. Those voter lists are then returned to the County Election Commission at the conclusion of the primary and forwarded to the State Election Commission. State law also requires the Democratic Party to file with the Greenville County Clerk of Court the identity of the party officers of the Greenville County Democratic Party. J619-652. Also, candidates for the nomination of the Democratic Party must file paperwork that contains the Democratic candidate's voter registration number.

The Greenville County Republican Party compared the list of people who received a ballot in the 2011 City of Greenville Republican Party municipal primary to the documents identifying the Democratic Party officers in Greenville County and to the documents filed by candidates seeking the nomination of the Democratic Party for public office. The Chairman of the Greenville County Democratic Party and several party officers of the Greenville County Democratic Party all appear on the list of voters eligible to vote in the Republican Party municipal primary, and, in fact, many of the party officers of the Greenville County Democratic Party actually received a ballot and voted in the 2011 Greenville County Republican Party municipal primary. JA602-605; 619-652.

11

There are other rival political party officers voting in the primaries in Greenville County. The official list of people who received ballots indicates that several political party officers of the Libertarian Party and Constitution Party voted in Greenville County for the Republican nominee. JA593-606. In fact, Defendant-Intervenor Wayne Griffin is the Chairman of the South Carolina Independence Party, and he has voted several times in Greenville County in the Republican Party primary. JA593. Also, Defendant-Intervenor Reginald Griffin is the Treasurer of the South Carolina Independence Party, and he has voted in Greenville County in the Republican Party primary. JA594.

In addition to rival political party officers voting in the Republican Party primaries, candidates from rival political parties are also voting in the Republican Party primary. In Greenville County, several candidates seeking the nomination of the Libertarian Party, the Constitution Party, and the Green Party voted in Greenville County for the Republican nominees. JA593-606. The Greenville County Republican Party found at least six candidates seeking the nomination of the Democratic Party who voted in a Republican Party primary. JA593-606. In fact, two Defendant-Intervenors, Harold Mitchell and Joseph Jefferson, Jr., Democratic members of the South

Carolina House of Representatives, voted in the Republican Primary. JA593-594. These elected Democrats are choosing the Republican nominees. *Id.*

Dr. Nathan Drake is an assistant professor of mathematics and chair of the department of mathematics at North Greenville University. JA444. He has a Ph.D. in mathematical sciences from Clemson University. *Id.* He was retained by the Greenville County Republican Party to compare and count the voter registration numbers of the people who voted in a specific Democratic Party primary to the voter registration numbers of the people who voted in a specific Republican Party primary. JA447.

For example, Dr. Drake compared the voter registration numbers for the 2008 Democratic Party presidential preference primary which occurred on January 26, 2008, between Sen. Barack Obama, Sen. Hillary Clinton, and Sen. John Edwards to the Republican Party presidential preference primary which occurred on January 21, 2012. JA448. There was no competing Democratic Party presidential preference primary in 2012 because President Obama had no primary opposition for the nomination. So, the only primary on that day in South Carolina was the Republican Party primary. Dr. Drake counted 47,794 matches in the data file containing the voter registration numbers of the voters in the Republican Party primary. *Id.* The total number of votes cast in the 2012 Republican presidential preference primary was

13

596,916, so 8.01% of the voters in the Republican primary in 2012 had cast a ballot for either Sen. Barack Obama, Sen. Hillary Clinton, or Sen. John Edwards in 2008. *Id.*

Also, for example, Dr. Drake compared the voter registration numbers for the 2008 Democratic Party presidential preference primary which occurred on January 26, 2008, to a Republican Party special election primary for House District 92 which occurred on February 5, 2008. JA449. The primaries took place only ten days apart. For the Republican Party primary, there were 385 matches and 1,335 non-matches. *Id.* The total number of votes cast was 1,720. The percentage of voter registration number matches for the Republican primary data file was 22.38%. *Id.* This means that 22.38% of the voters in the Republican primary special election had cast a ballot for either Sen. Barack Obama, Sen. Hillary Clinton, or Sen. John Edwards just ten days earlier. Dr. Drake also counted the number of Democrats who voted in races that occurred in Greenville County (House District 21). JA450.

Dr. Reginald Ecarma is a professor of mass communications at North Greenville University, and his specialty is in political communications. JA491. He has also been an adjunct professor at Furman University (2004-2009) and he taught Introduction to Mass Communication, Introduction to

14

U.S. Government and other courses at Furman University. JA492. Dr. Ecarma filed an expert report in which he expressed the opinion that "to a reasonable degree of political communication certainty, that it is more probable than not that South Carolina's open primary system strongly influences or causes Republican candidates and officials to moderate or change political speech in contradiction to the principles found in the South Carolina Republican Party and Greenville County Republican Party platforms. The moderation or change is predicated by the Republican candidates and official's prior knowledge that Democrats and Independents can and do vote in the Republican Party Primary." JA489.

### C. The Financial Disclosure Statements of the Greenville County Republican Party.

The Greenville County Republican Party and South Carolina Republican Party are considered separate independent organizations and file separate financial disclosure statements with the State Ethics Commission and Federal Election Commission. JA680. As such, the South Carolina Republican Party does not disclose the money raised or spent by the Greenville County Republican Party on the financial disclosure statements filed by the South Carolina Republican Party. *Id.*

15

### D. Facts Regarding William Mitchell.

William Mitchell is a resident and elector in the City of Greenville. JA65. When Mr. Mitchell votes in the City of Greenville Republican Party municipal primary, the primary is conducted by volunteers from the Greenville County Republican Party. However, voters who live outside of the city limits get to vote in a primary for county and state-wide offices conducted by a paid, full-time, professional staff from the State Election Commission and the County Election Commission.

### SUMMARY OF ARGUMENT

This Court should reverse the District Court's decision granting summary judgment to the Defendants on the facial challenges to the constitutionality of the election laws. In addition, this Court should reverse the decision dismissing the claims of the Greenville County Republican Party and William Mitchell for lack of standing. The District Court made seven errors. First, it erroneously concluded that the mandatory 2011 City of Greenville Republican Party open primary, and previous municipal primaries, did not violate, on their face, the Greenville County Republican Party's constitutional right to the freedom of political association guaranteed by the First and Fourteenth Amendments to the United States Constitution. Second, the District Court erroneously concluded that the state election laws

16

requiring the Greenville County Republican Party to conduct, pay for, and certify an open primary did not violate, on their face, the Greenville County Republican Party's constitutional right to the freedom of political association guaranteed by the First and Fourteenth Amendments to the United States Constitution. Third, the District Court erroneously concluded that S.C. Code § 7-11-30, titled "Convention Nomination of Candidates," does not violate, on its face, the Greenville County Republican Party's First Amendment right to the freedom of political association. Fourth, the District Court erroneously concluded that S.C. Code § 7-11-30, does not violate, on its face, the Greenville County Republican Party's rights under the Equal Protection Clause of the U.S. Constitution. Fifth, the District Court erroneously concluded that S.C. Code §§ 7-13-15 and 5-15-80 do not violate, on their face, William Mitchell's rights under the Equal Protection Clause of the Fourteenth Amendment. Sixth, the District Court erroneously concluded that the Greenville County Republican Party did not have standing to assert its constitutional rights to the freedom of political association and the equal protection of the laws. Seventh and finally, the District Court erroneously concluded that William Mitchell did not have standing to assert his constitutional right to the equal protection of the laws. This Court should

grant summary judgment in favor of the Greenville County Republican Party and William Mitchell on their facial challenges to the election laws.

## ARGUMENT

## I. STANDARD OF REVIEW

### A. Standard of Review for Reviewing the District Court's Grant of Summary Judgment.

This Court reviews a District Court's summary judgment order *de novo* if the decision assesses the constitutionality of a law or ordinance. *Brown v. Town of Cary*, 706 F.3d 294, 300 (4th Cir. 2013) (*citing Webster v. U.S. Dep't of Agric.*, 685 F.3d 411, 421 (4th Cir. 2012). This Court reviews the facts of the case in the light most favorable to the non-moving party. *Jennings v. Univ. of N.C.*, 482 F.3d 686, 694 (4th Cir. 2007).

### B. Standard of Review for Reviewing the District Court's Dismissal for Lack of Standing.

This Court "review[s] the district court's dismissal of the suit for lack of standing *de novo*." *Marshall v. Meadows*, 105 F.3d 904, 905-6 (4th Cir. 1997) (*citing Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir.1994)).

## II. DISCUSSION OF ISSUES

### A. The South Carolina Open Primary System in General.

The S.C. Code does not contain a specific section that establishes an open primary system. Instead, the S.C. Code contains a series of five code

18

sections that have the effect of creating an open primary system for the State of South Carolina. S.C. Code § 7-5-420 (Lists of Voters for Party Primaries); § 7-5-610 (Who is Entitled to Vote in Municipal Elections); § 7-5-630 (Municipal Registration or Enrollment Shall not be Required); § 7-15-320 (Persons Qualified to Vote by Absentee Ballot); § 7-5-340 (Duties of State Election Commission Respecting Removal of Elector from Official List). For example, § 7-5-340, Duties of State Election Commission Respecting Removal of Elector from Official List, states in part:

> The State Election Commission shall:
> (1) ensure that the name of a qualified elector may not be removed from the official list of eligible voters except:
> (a) at the request of the qualified elector;
> (b) if the elector is adjudicated mentally incompetent by a court of competent jurisdiction;

The code sections have the effect of causing every person who has registered to vote to be on the "official list" of eligible voters for every primary. The Greenville County Election Commission delivers the "official list" of eligible voters to the Greenville County Republican Party Executive Committee prior to each municipal primary. S.C. Code § 7-5-420.

**B. The Open Primary System for a Municipal Primary.**

The Greenville County Election Commission delivers to the Greenville County Republican Party Executive Committee the "official list"

of eligible voters entitled to vote in the municipal primary prior to each

municipal primary:

> Immediately preceding each party primary election the board of
> registration in each county shall furnish to the <u>county</u>
> <u>committee</u> of each political party proposing to hold a primary
> two <u>official lists</u> of voters for each polling precinct in the
> county, containing in each the <u>names of all electors entitled to</u>
> <u>vote</u> at each precinct.

S.C. Code § 7-5-420 (emphasis added). The "official list" of voters is *not*

delivered to the South Carolina Republican Party. *Id.*

The Greenville County Republican Party Executive Committee is not

allowed to remove names from the "official list" of eligible voters for

municipal elections due to the combined effect of the following three code

sections:

> Every citizen of this State and of the United States:
> (1) Of the age of eighteen years and upwards;
> (2) Having all the qualifications mentioned in Section 7-5-120
> [Qualifications for registration];
> (3) Who has resided within the corporate limits of any
> incorporated municipality in this State for thirty days previous
> to any municipal election;
> (4) Who has been registered for county, state, and national
> elections as herein required;
> <u>is entitled to vote at all municipal elections</u> of his municipality.

S.C. Code § 7-5-610 (Who is Entitled to Vote in Municipal Elections)

(emphasis added); and,

20

> There shall be no registration or enrollment required for voting in municipal elections except the registration required for voting in county, State and national elections.

S.C. Code § 7-5-630 (Municipal Registration or Enrollment Shall not be

Required); and,

> A qualified elector in any of the following categories <u>must be permitted to vote by absentee ballot in all elections</u> when he is absent from his county of residence on election day during the hours the polls are open, to an extent that it prevents him from voting in person …:
> (1) <u>students, their spouses, and dependents residing with them;</u>
> (2) members of the Armed Forces and Merchant Marines of the United States, their spouses, and dependents residing with them;
> (3) persons serving with the American Red Cross or with the United Service Organizations (USO) who are attached to and serving with the Armed Forces of the United States, their spouses, and dependents residing with them;
> (4) <u>persons in employment;</u>
> (5) physically disabled persons;
> (6) governmental employees, their spouses, and dependents residing with them;
> [(7) – (15) deleted due to length]

S.C. Code § 7-15-320 (Persons Qualified to Vote by Absentee Ballot)

(emphasis added). The categories of "students" and "persons in

employment" are so broad and undefined that the Greenville County

Republican Party is essentially required to give an absentee ballot to every

elector who claims to be a "student" or has "employment." For example, an

officer of the Greenville County Democratic Party who is a student or who is

21

self-employed is entitled to an absentee ballot from the Greenville County Republican Party.

### C. The Mandatory Open Primary for the City of Greenville Municipal Primary.

The Greenville County Republican Party Executive Committee can nominate candidates for the municipal offices of Mayor, City Council, and Water Commissioner for the City of Greenville. S.C. Code § 5-15-80. The Greenville County Republican Party Executive Committee conducted and paid for the June 14, 2011, City of Greenville Republican Party municipal primary. In addition, it has conducted and paid for previous municipal primaries and it intends to continue to conduct and pay for municipal primaries - as required by law. The municipal primary is a mandatory open primary. There is no S.C. Code section that allows the Greenville County Republican Party to nominate candidates for municipal office by a method other than the open primary method. There is no provision in the S.C. Code that allows the Greenville County Republican Party to nominate municipal candidates by the convention method.

The South Carolina State Election Commission is prohibited from conducting or paying for the City of Greenville's municipal primary by S.C. Code § 7-13-15(A)(1). Also, S.C. Code § 7-13-15(A)(1) prohibits the Greenville County Election Commission from conducting a municipal

primary. Next, S.C. Code § 5-15-80 requires the local political party for the municipality, in this case the Greenville County Republican Party, to conduct and pay for the 2011 municipal primary, as well as past and future primaries. The City of Greenville does not conduct or pay for a municipal primary because of S.C. Code § 5-15-80.

S.C. Code § 7-15-395 requires the Greenville County Republican Party to pay for the ballots and elections materials for the primary. The S.C. Code is clear that: "All expenses incurred by any political party in conducting elections subject to the provisions of this article shall be borne by such political party." S.C. Code § 7-15-395.

## D. The Greenville County Republican Party Declares the Municipal Office Nominees and the South Carolina Republican Party cannot Overturn the Decision of the Greenville County Republican Party.

The Greenville County Republican Party certifies the municipal nominees to the City of Greenville. S.C. Code § 5-15-80; JA577, 584. If a candidate for municipal office contests the certified results of the municipal primary, the Greenville County Republican Party Executive Committee hears the election contest, and it issues a decision regarding the nominee of the Greenville County Republican Party. S.C. Code § 5-15-80; JA577, 584. The importance of this code section, for purposes of the issues before this Court, is that the South Carolina Republican Party cannot hear or decide the

23

election contest or protest in a municipal primary. S.C. Code § 5-15-80. State law does not allow the losing candidate to appeal the decision of the Greenville County Republican Party to the South Carolina Republican Party. *Id.* Instead, the appeal goes directly to the government – the State Election Commission. *Id.* The South Carolina Republican Party has absolutely no role in determining the municipal nominees of the Greenville County Republican Party and it *cannot overturn* the decision of the Greenville County Republican Party. *Id.* If a conflict arises between the Greenville County Republican Party and the South Carolina Republican Party over a municipal nomination, state law grants the Greenville County Republican Party the final judgment in the matter (subject to an appeal to the government). *Id.*

### E. Nomination for County Offices by the Greenville County Republican Party for Unopposed Candidates.

The Greenville County Republican Party Executive Committee is required by law to nominate a candidate for a county office if the candidate is unopposed for the nomination. S.C. Code § 7-11-90 states that: "After the closing of entries if any candidates shall be unopposed, the State committee in the case of State offices and the <u>county committees</u> [Greenville County Republican Party Executive Committee] <u>in the case of county offices</u> shall declare such unopposed candidates as party nominees, and the names of

24

unopposed candidates shall not be placed upon the primary election ballots but shall be certified for the general election ballots."  The importance of this code section, for purposes of the case *sub judice*, is that the Greenville County Republican Party Executive Committee declares and certifies the nominees for county offices. The South Carolina Republican Party does *not* declare or certify the nominees for county offices.

### F.  Nomination for County Offices by the Greenville County Republican Party by the Primary Method or the Convention Method.

The Greenville County Republican Party can nominate candidates for county office. S.C. Code § 7-11-30. For example, the Greenville County Republican Party can nominate candidates for the offices of Sheriff, Treasurer, Clerk of Court, Auditor, Coroner, Register of Deeds, and County Council for Greenville County. The South Carolina Republican Party Executive Committee and the South Carolina Republican Party state convention *cannot* nominate candidates for county offices. S.C. Code § 7-11-30; S.C. Code § 7-11-90.

The Greenville County Republican Party can use either the primary method of nomination or the convention method of nomination. S.C. Code § 7-11-30. The primary method of nomination is an open primary due to the combined effect of a series of election laws. See citations in discussion,

*supra*. The open primary is conducted by the State Election Commission and the Greenville County Election Commission on behalf of the Greenville County Republican Party. S.C. Code § 7-13-15. However, if there is a dispute over who won the nomination using the open primary method, all election contests are heard by the Greenville County Republican Party Executive Committee and it has the authority to declare the nominee, and it certifies the results of the county primary. S.C. Code § 7-17-530. For example, if the candidate with the least amount of votes for the nomination contests the validity of the open primary election conducted by the government, the Greenville County Republican Party Executive Committee has the statutory authority to declare the person with the least amount of votes the nominee of the party. *Id.*

The open primary for county offices is the "default" method of nomination. The Greenville County Republican Party can "opt out" of the open primary for county offices if the Greenville County Republican Party holds a county convention and passes a motion to use the convention method for nominations that reaches a three-fourth supermajority threshold; and, the vote must be calculated using a very restrictive tabulation method. S.C. Code § 7-11-30, titled "Convention Nomination of Candidates," states that: "If a party nominates candidates by conventions … the county conventions

26

shall nominate the party's candidates for all county offices. No convention shall make nominations for candidates for offices unless the decision to use the convention method is reached by a three-fourths vote of the total membership of the convention."

The Greenville County Republican Party cannot nominate candidates by the convention method by a simple majority vote of the convention delegates. The Greenville County Republican Party cannot use a tabulation method based on the number of delegates present and voting, but instead must use the more restrictive tabulation method of "the total membership of the convention." So, if delegates leave the convention before the vote on the motion to nominate by convention, it becomes more and more difficult to reach the three-fourths supermajority threshold each time a delegate leaves the convention. If just a quarter of the delegates, plus one delegate, were to leave the convention for a break, the motion could not pass even if every remaining delegate voted for the motion. The code section requires the nomination by convention method to be adopted at a county convention. So, the Greenville County Republican Party could not pass a motion to use the nomination by convention method at a regular meeting of the Greenville County Republican Party Executive Committee.

State law allows each county party to make an independent decision on whether it wants to use the convention method or primary method to nominate candidates for county office. S.C. Code § 7-11-30. So, the Greenville County Republican Party can choose to nominate candidates for county offices by the convention method even if the South Carolina Republican Party chooses to nominate candidates for state-wide office by the primary method; and, the other forty-five counties in South Carolina all choose to nominate candidates for county office by the primary method.

**G. Political Parties cannot Nominate by Petition.**

The District Court made an error of law in its Opinions and Orders when it held that political parties can nominate by petition. JA312. In South Carolina, political parties may nominate candidates by political party primary, and for some offices, by political party convention. S.C. Code § 7-11-10. The nominee of the political party has an advantage over other contenders for the office because the nominee has his or her name printed on the ballot in the November general election, the party designation (Republican, Democrat, Green) appears next to the candidate's name, and if an elector chooses the straight party ticket option of voting, the nominee of that party gets credit for the elector's vote. Write-in candidates do not have their name printed on the November general election ballot. Petition

candidates are candidates for public office who collect enough signatures (5% of the registered voters for the geographical area of the office) to have their name placed on the November general ballot. S.C. Code § 7-11-70. Petition candidates are not the nominees of any political party. In fact, they are often candidates who do not want to affiliate with any political party.

In the Opinion and Order dated March 30, 2011, JA239, the Opinion and Order dated July 18, 2011, JA308, and in the Opinion and Order dated August 30, 2013, JA716, the District Court held that political parties may nominate by primary, convention, or by petition. However, S.C. Code Ann. § 7-11-10, "Methods of Nominating Candidates," states: "Nominations for candidates for the offices to be voted on in a general or special election may be by *political party* primary, by *political party* convention or by petition." (emphasis added). The plan language of § 7-11-10 drops the words "political party" in front of the word "petition." There is no code section in the South Carolina Codes that allows for a person to be nominated by petition by a political party. In fact, the concept of political party petition is nonsensical in South Carolina. Any person who gets the required number of signatures has his or her name placed on the ballot as a petition candidate with no political designation next to the candidate's name. As such, there can be several petition candidates for Governor, all of whom could claim to be the nominee

29

of the Republican Party according to the District Court. The purpose of a nominating primary or convention is to reduce the number of candidates down to one nominee so that the votes of the party won't be split in the general election. The District Court committed an error when it held that political parties can nominate by petition.

**H. Case Law on the Constitutionality of Open Primaries.**

The Fourth Circuit has two cases discussing open primaries. *Miller v. Brown (I)*, 462 F.3d 312 (4th Cir. 2006); *Miller v. Brown (II)*, 503 F.3d 360 (4th Cir. 2007). In *Miller (II)*, the State of Virginia conducted a state-run open primary. A Republican Party senatorial district challenged the open primary and the Fourth Circuit held that the open primary was unconstitutional as applied because the state restricted the party's ability to opt out of the state-run open primary. The party was unable to opt out of the state-run open primary because the incumbent office holder was allowed to choose the method of nomination under state law. This Court noted that "the type of forced association caused by a mandatory open primary causes significant injury to the First Amendment rights of a political party." *Miller (II)*, 503 F.3d at 368. The Fourth Circuit indicated that open primaries are *per se* unconstitutional if they are mandatory (i.e., there is a legal

30

impediment which prevents the political party from opting out of the open primary).

The United States Supreme Court has also ruled on the constitutionality of an open primary. *Democratic Party v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981). The State of Wisconsin required the political parties to conduct an open primary when selecting delegates to the national convention. The National Democratic Party wanted primary voters to publicly declare their party affiliation with the Democratic Party before voting in the primary. The Wisconsin Supreme Court held that the Democratic Party had to accept the delegates elected in the open primary. The U.S. Supreme Court reversed and held that the Democratic Party did not have to accept the delegates elected in the open primary because the Democrats cannot be forced to associate with delegates elected in an open primary.

**I. Case Law on the Constitutional Rights of Political Parties.**

To assess the constitutionality of a state election law, the Court will first examine whether it severely burdens rights protected by the First and Fourteenth Amendments. *Eu v. San Francisco Democratic Central Committee*, 489 U.S. 214, 222 (1989); *Calif. Democratic Party v. Jones*, 530 U.S. 567, 582 (2000); *Clingman v. Beaver*, 544 U.S. 581, 586-587 (2005). If

the challenged law severely burdens the rights of political parties and their members, it can survive constitutional scrutiny only if the state shows that it advances a compelling state interest and is narrowly tailored to serve that interest. *Id*. If the challenged law imposes only a minor burden on the party's associational rights, then the law can survive constitutional scrutiny if the state has important regulatory interests to justify reasonable, nondiscriminatory restrictions. *Clingman*, 544 U.S. at 586-587; *Wash. State Grange v. Wash. State Republican Party*, 522 U.S. 442, 458 (2008).

It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments. *Eu*, 489 U.S. at 224; *La Follette*, 450 U.S. at 121. The process by which political parties select their nominees are not wholly public affairs that states may regulate freely. *Jones*, 530 U.S. at 572-573. To the contrary, the courts have continually stressed that when states regulate parties' internal processes they must act within limits imposed by the Constitution. *Jones*, 530 U.S. at 572-573; *See, e.g., Eu*, 489 U.S. 214; *La Follette*, 450 U.S. 107.

The freedom to associate for the common advancement of political beliefs, necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only. *La Follette*, 450 U.S. at 122; *Tashjian v. Republican Party of Connecticut*,

32

479 U.S. 208, 215 (1986). Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents. *Id.* Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, but also that a political party has a right to identify the people who constitute the association and to select a standard-bearer who best represents the party's ideologies and preferences. *Eu*, 489 U.S. at 224; *La Follette*, 450 U.S. at 121.

On several occasions, the courts have recognized that the inclusion of persons unaffiliated with a political party may seriously distort its collective decisions – thus impairing the party's essential functions – and that political parties may accordingly protect themselves from intrusion by those with adverse political principles. *La Follette*, 450 U.S. at 122. A state, or a court, may not constitutionally substitute its own judgment for that of the party. *Id.* at 123-124. A political party's choice among the various ways of determining the makeup of its nominees is protected by the Constitution. *Id.* at 123-124.

The party's determination of the boundaries of its association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution. *Tashjian*, 479 U.S. 208.   A corollary of the right to associate is the right not to associate. *Jones*, 530 U.S. at 574. In no area is a

33

political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day. *Jones*, 530 U.S. at 575.

It is unconstitutional for a state law to force political parties to associate with – to have their nominees, and hence their positions, determined by – those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival. *Jones*, 530 U.S. at 577. A single election in which the party nominee is selected by nonparty members could be enough to destroy the party. *Id.* at 579.

The U.S. Supreme Court has discussed the importance of the candidate- selection process to political parties and held that it is a basic function of a political party to choose its own leaders. *Jones*, 530 U.S. at 580. "There is simply no substitute for a party selecting its own candidates." *Id.* at 581. The U.S. Supreme Court stated that: "The Court can think of no heavier burden on a political party's associational freedom than a forced association with persons wholly unaffiliated with the party during the candidate-selection process." *Id.* at 581-582.

The type of forced association caused by a mandatory open primary causes significant injury to the First Amendment rights of a political party. *Miller (II)*, 503 F.3d at 368. As the *Miller (I)* court noted in its decision:

34

The participation of Democrats in the plaintiffs' upcoming primary is inevitable. Knowing their upcoming process for selecting a nominee will include Democrats prevents the plaintiffs from formulating a message and selecting the candidates best tailored to their party's interests. The plaintiff's goal to nominate the candidate who best represents the interests of the Republican Party in [the district] is thwarted if the plaintiffs must account for Democrats in the primary. Knowing that voters wholly unaffiliated with the plaintiffs' party will participate in their primary dramatically changes the plaintiffs' decisions about campaign financing, messages to stress, and candidates to recruit.… The open primary law causes the plaintiffs to associate with Democrats during the candidate-selection process. Under Virginia law, Democrats cross over and vote in the Republican primary free of procedural impediments, such as changing voter registration or paying a fee. Accounting for Democrats in the primary causes the plaintiffs to alter campaign decisions.… We can think of no heavier a burden on a political party's associational rights.

*Miller (l)*, 462 F.3d at 317-318 (internal citations omitted).

**ISSUE ONE: South Carolina's Mandatory Open Primary for Municipal Offices is Unconstitutional because it Violates the Greenville County Republican Party's Right to the Freedom of Political Association.**

The Fourth Circuit has two cases discussing open primaries that are mandatory. *Miller v. Brown (I)*, 462 F.3d 312 (4th Cir. 2006); *Miller v. Brown (II)*, 503 F.3d 360 (4th Cir. 2007). The Fourth Circuit noted that "the type of forced association caused by a mandatory open primary causes significant injury to the First Amendment rights of a political party." *Miller (II)*, 503 F.3d at 368. The Fourth Circuit indicated that open primaries are *per se* unconstitutional if they are mandatory (i.e., there is a legal

35

impediment which prevents the political party from opting out of the open primary). *Id.*

In this case, the combined effect of the S.C. Code sections cited *supra* had the effect of imposing a mandatory open primary on the Greenville County Republican Party when it conducted the 2011 City of Greenville municipal primary, and when it has to conduct municipal primaries in the future. The mandatory open primary for municipal primaries violates the Greenville County Republican Party's constitutional right to the freedom of political association guaranteed by the First and Fourteenth Amendments to the United States Constitution. The constitutionality of mandatory open primaries has already been decided by the Fourth Circuit and summary judgment should be granted in favor of the Greenville County Republican Party on that issue. It was an error for the District Court to grant summary judgment in favor of the Defendants.

The Greenville County Republican Party asks this Court to declare that its constitutional rights were violated when it had to conduct the mandatory 2011 City of Greenville Republican Party open primary (and previously mandated municipal open primaries). Also, the Greenville County Republican Party asks this Court to declare S.C. Code §§ 7-13-15, 7-5-420, 7-5-610, 7-5-630, 7-15-320 and 7-5-340 void, as unconstitutional on

their face, and enjoin the Defendants from enforcing them against the

Greenville County Republican Party.

**ISSUE TWO: It is Unconstitutional to Compel the Greenville County Republican Party to Conduct, Pay for, and Certify the Results of an Open Primary as the State Action Violates the Greenville County Republican Party's Right to the Freedom of Political Association.**

The state dictates to the Greenville County Republican Party that its

municipal nominees should be chosen by the open primary method. In

addition, the government adds insult to constitutional injury and forces the

Greenville County Republican Party to conduct and pay for the open

primary. Also, the government forces the Greenville County Republican

Party to certify the results of a primary in which Democrats are voting for

the leadership and standard-bearers of the party. This state action violates

the Greenville County Republican Party's constitutional right to the freedom

of political association guaranteed by the First and Fourteenth Amendments

to the United States Constitution.

The decisions in *Miller v. Brown (I)*, 462 F.3d 312 (4th Cir. 2006) and

*Miller v. Brown (II)*, 503 F.3d 360 (4th Cir. 2007) are directly on point. The

election laws severely burden rights protected by the First and Fourteenth

Amendments. The government cannot show that forcing the Greenville

County Republican Party to conduct, pay for, and certify an open primary

advances a compelling state interest and is narrowly tailored to serve that

37

interest. It is constitutionally outrageous for the government to compel the Greenville County Republican Party to participate in an affirmative act (the party's vote to certify the results) so that the nomination process has the appearance of validity. If the government wants an open primary, it should at least have to pay for the open primary and spend its time conducting the open primary. If the government believes an open primary is a good thing, then the government should at least certify the validity of the primary. The constitutional right of the Greenville County Republican Party to the freedom of political association is violated when the government forces it to conduct, pay for, and certify the results of any open primary.

It was an error for the District Court to grant summary judgment in favor of the Defendants. The Greenville County Republican Party asks that this Court grant summary judgment to it on the constitutionality of the government forcing the Greenville County Republican Party to conduct, pay for, and certify an open primary. Also, the Greenville County Republican Party asks this Court to declare S.C. Code §§ 7-13-15, 5-15-80, 7-5-420, 7-5-610, 7-5-630, 7-15-320 and 7-5-340 void, as unconstitutional on their face, and enjoin the Defendants from enforcing them against the Greenville County Republican Party.

**ISSUE THREE: S.C. Code § 7-11-30 is Unconstitutional because it Violates the Greenville County Republican Party's Right to the Freedom of Political Association.**

This issue addresses the nomination of candidates by the Greenville County Republican Party for county office. S.C. Code § 7-11-30, titled "Convention Nomination of Candidates," is unconstitutional because it violates the Greenville County Republican Party's First Amendment right to the freedom of political association. The code section places an impediment on the Greenville County Republican party from "opting out" of the state-run open primary. The code section states that:

> If a party nominates candidates by conventions,…the county conventions shall nominate the party's candidates for all county offices. No convention shall make nominations for candidates for offices unless the decision to use the convention method is reached by a three-fourths vote of the total membership of the convention.

*Id.* The Greenville County Republican Party believes that the State of South Carolina is the only state that imposes upon a political party the requirement of three-fourths supermajority to nominate by convention.

S.C. Code § 7-11-30 is unconstitutional on its face. Again, the courts have continually stressed that when States regulate parties' internal processes they must act within limits imposed by the Constitution. *Eu*, 489 U.S. 214; *La Follette*, 450 U.S. 107. In *Eu v. San Francisco County*

39

*Democratic Central Comm.*, the U.S. Supreme Court struck down a state law that required political parties to organize on a county level (as opposed to a regional level), limited the term of the party's chairman to a single, two year term (no re-election), and required the position of chairman to rotate from a resident of Northern California to a resident of Southern California.

The code section in this case regulates the Greenville County Republican Party's internal processes. First, the code dictates the vote percentage (75%) needed to make a decision to use the convention method to nominate candidates. The party is not free, under the code section, to nominate by convention by a simple majority, or a bare plurality set by a party rule (i.e., 20%). Second, the code section dictates that the method of nomination is to be made by the county convention. This restriction limits the internal decision making processes of the Greenville County Republican Party, as the party is not free to make the decision at a regular meeting of the Greenville County Republican Party Executive Committee. Finally, the statute requires the vote to be calculated using the "vote of the total membership of the convention" tabulation method, as opposed to a vote tabulated using the "total votes cast," or "present and voting" method. Again, if delegates leave the convention before the vote on the motion to nominate by convention, it becomes more and more difficult to reach the

40

three-fourths supermajority threshold each time a delegate leaves the convention. If just a quarter of the delegates, plus one delegate, were to leave the convention for a break, the motion could not pass even if every remaining delegate voted for the motion.

In this case, S.C. Code § 7-11-30 severely burdens the Greenville County Republican Party's associational rights. It prevents the Greenville County Republican Party from opting out of the state-run open primary for county offices. Therefore, the government must show that S.C. Code § 7-11-30 advances a compelling state interest and is narrowly tailored to serve that interest. The government cannot articulate any compelling state interest. In addition, even if it could formulate a compelling state interest, the code section is not narrowly tailored to serve that interest. If this Court determines that the challenged law imposes only a minor burden on the party's associational rights, then the law can survive constitutional scrutiny if the state has important regulatory interests to justify reasonable, nondiscriminatory restrictions. Again, the government cannot articulate any important regulatory interests. Also, a three-fourths supermajority requirement is not reasonable, since it is virtually impossible to get 75% of the membership of any organization to agree on any matter, and the regulation is discriminatory since other organizations are allowed to make

41

decisions with a simple majority (*see* discussion *infra*). Therefore, the code section is unconstitutional because it violates the Greenville County Republican Party's First Amendment right to the freedom of political association.

The District Court found that the code section only places a minor burden on the Greenville County Republican Party's associational rights. JA253, 313. This was an error of law as the burden is severe according to *Miller (I)* and *(II)*. In addition, the District Court found some important, or legitimate state interests that satisfy the lower level of scrutiny for minor burdens: (1) protecting and preserving the integrity of the nominating process; (2) promoting fairness; (3) increasing voter participation; and (4) ensuring administrative efficiency. JA260-262, 313-314. However, the United States Supreme Court and the Fourth Circuit have already held that the District Court's proffered state's interests are not sufficient state interests. *La Follette*, 450 U.S. at 124-125 (rejecting preservation of the overall integrity of the electoral process and increasing voter participation); T*ashjian*, 479 U.S. at 217-222 (rejecting administrative efficiency and integrity of the nominating process); *Eu*, 489 U.S. at 226-227 (rejecting stable government and voter confusion); *Jones*, 530 U.S. at 582-586 (rejecting better candidates, disenfranchisement, promoting fairness, and

42

increasing voter participation; *Miller (II)*, 503 F.3d at 370-371 (rejecting preservation of the integrity of the election process and encouraging voter participation).

The code section places an impediment on the Greenville County Republican Party from opting out of the state-run open primary for county offices, and it is therefore unconstitutional. *Miller (I)*, 462 F.3d 312; *Miller (II)*, 503 F.3d 360. In addition, the code section violates the associational rights of the Greenville County Republican Party. It was an error for the District Court to grant summary judgment in favor of the Defendants. The Greenville County Republican Party requests that this Court grant summary judgment in its favor, and hold that S.C. Code § 7-11-30, on its face, is unconstitutional.

**ISSUE FOUR: S.C. Code § 7-11-30 is Unconstitutional Because it Violates the Greenville County Republican Party's Rights Under the Equal Protection Clause.**

This issue addresses the nomination of candidates by the Greenville County Republican Party for county office. S.C. Code § 7-11-30 is also unconstitutional because it violates the Greenville County Republican Party's rights under the Equal Protection Clause of the U.S. Constitution. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection

43

of the laws. The Amendment requires that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). If a classification is drawn upon an inherently suspect distinction such as race, religion, gender, or alienage the challenged policy is subjected to strict scrutiny and will be sustained only if it is narrowly tailored to serve a compelling state interest. *Cleburne*, 473 U.S. at 440. If a classification is not drawn on an inherently suspect distinction, the courts presume the constitutionality of the statutory discrimination and require only that the classification challenged be rationally related to a legitimate state interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

In this case, the Defendants treat a political organization differently than other organizations, such as churches, partnerships, corporations, and non-profit organizations. The Greenville County Republican Party is required to make a decision to nominate by convention by a three-fourths vote, while other organizations are allowed to make decisions based on a majority vote according to state statute. The State of South Carolina allows limited liability companies to make decisions by a majority vote:

> Any matter relating to the business of the company may be
> decided by a majority of the members.

S.C. Code § 33-44-404(a)(2) (*See also*, S.C. Code § 33-44-103 and *see generally* the Uniform Limited Liability Company Act of 1996 § 33-44-101,

*et seq.*). The state also allows corporations to make decisions by a majority vote, S.C. Code § 33-2-106. (*See generally* South Carolina Business Corporation Act of 1988 § 33-1-101, *et seq.*). Next, the State allows partnerships to make decisions by a majority vote:

> Any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners.

S.C. Code § 33-41-510(8). (*See generally* the Uniform Partnership Act § 33-41-10, *et seq.*). Finally, the State allows non-profits to make decisions by a majority vote. S.C. Code § 33-31-206 (*See generally* the South Carolina Nonprofit Corporation Act of 1994 § 33-31-101, *et seq.*).

Next, with this code section, the Defendants treat political organizations differently than other organizations, such as churches (with a leadership board), corporations (with a board of directors), and non-profit organizations (with a board of directors). Under this code section, the Greenville County Republican Party is required to make a decision by a vote of the entire convention membership, while other organizations are allowed to make decisions through their executive bodies. Churches are allowed to make decisions through deacon, elder, or similar boards. The state also allows corporations to make decisions through a board of directors, or other officers. (*See generally* South Carolina Business Corporation Act of 1988, §

45

33-1-101, *et seq*.). Finally, the state allows non-profits to make decisions by through a board of directors or other officers. (*See generally* the South Carolina Nonprofit Corporation Act of 1994 § 33-31-101, *et seq.*).

The classification in this case (political party), appears to be an issue of first impression as counsel cannot find any similar case in which a state required a different voting percentage for a political party than other private organizations. If this Court believes the classification is not drawn on an inherently suspect distinction, then the Defendants must show that the Code is rationally related to a legitimate state interest. In this case, the State cannot demonstrate that the code section is rationally related to a legitimate state interest.

The District Court committed an error when it granted summary judgment to the Defendants on this issue. There is no genuine issue of material fact that S.C. Code § 7-11-30 is unconstitutional, on its face, because it violates the Greenville County Republican Party's right to the equal protection of the laws. Therefore, the Court should declare S.C. Code § 7-11-30 void and enjoin the Defendants from enforcing it against the Greenville County Republican Party.

**ISSUE FIVE: The Election Laws Violate William Mitchell's Right to the Equal Protection of the Laws.**

**A.**

It is a violation of the Equal Protection Clause to compel William Mitchell to vote in a primary conducted by volunteers of the Greenville County Republican Party when residents who live in the county do not have to vote in a primary conducted by volunteers of the Greenville County Republican Party, but instead, get to vote in primaries conducted by a paid, full-time, professional staff from the State Election Commission and County Election Commission.

**B.**

The U.S. Supreme Court has succinctly and decisively held that:

A citizen, a qualified voter, is no more nor no less so because he lives in the city or on the farm. This is the clear and strong command of our Constitution's Equal Protection Clause.

*Reynolds v. Sims*, 377 U.S. 533, 568 (1964). The U.S. Supreme Court has stated that there is no indication in the Constitution that the site of a home or an occupation affords a permissible basis for distinguishing between qualified voters within the State. *Gray v. Sanders*, 372 U.S. 368, 380 (1963). The Equal Protection Clause requires that, once a geographical unit for which a representative is to be chosen is designated, all who participate in the election must have an equal vote -- whatever their race, whatever their

47

sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit. *Id.* at 379-380.

### C.

S.C. Code §§ 7-13-15 and 5-15-80 violate the Equal Protection Clause of the Fourteenth Amendment. In this case, the code sections differentiate between people that live in the city, and those that live "on the farm" within the county, and therefore, they violate the guarantee of equal protection of the law. In addition, the right to vote is a fundamental right. *Kramer v. Union Free School District No. 15*, 395 U.S. 621 (1969); *Reynolds*, 377 U.S. 533; *Bush v. Gore*, 531 U.S. 98 (2000). As such, the government must show that it has a compelling government interest and it must be tailored "to achieve the articulated state goal." *Kramer*, 395 U.S. at 632. In this case, the Defendants have no compelling governmental interest that is tailored to achieve the state interest.

The District Court granted summary judgment in favor of the Defendants and denied William Mitchell's motion for summary judgment on this facial challenge. The District Court held that the unequal treatment was "a distinction without substance." JA259-260. The District Court also held that "there is no distinction between electors based on where they live that is imposed upon the elector by the State and, even if a distinction did exist as

Plaintiffs contend, it would not rise to the level of the invidious, arbitrary, or irrational conduct typically found to offend the Equal Protection Clause." JA260. This was an error of law.

**D.**

William Mitchell asks that this Court grant summary judgment in his favor and declare S.C. Code §§ 7-13-15 and 5-15-80 unconstitutional on their face. Next, he asks that this Court declare that his rights were violated during the past municipal primaries in which he voted. In addition, he asks this Court to enjoin the Defendants from conducting only state-wide and county primaries, but instead, the Defendants should conduct all primaries.

**ISSUE SIX: The Greenville County Republican Party has Standing to Assert Its Right to the Equal Protection of the Laws and Its Right to the Freedom of Political Association.**

**A.**

In order to have standing in federal court, the complainant must demonstrate: (1) they have suffered an actual or threatened injury; (2) a causal connection between the injury complained of and the challenged action; and, (3) the injury can be redressed by a favorable decision. *Marshall*, 105 F.3d at 906. In the District Court's decision, the court assumed for purposes of the motion to dismiss that the Greenville County Republican Party suffered an injury due to the election laws. JA731

49

("Putting the alleged injuries aside"). However, the court held that the Greenville County Republican Party could not establish a causal connection between the injury to its associational rights and the conduct of the Defendants. In addition, the court ruled that it was not able to redress the injury to the Greenville County Republican Party by a favorable decision. The District Court committed several errors of law in its analysis of the standing issue.

## B.

The Greenville County Republican Party has standing to assert its rights to the equal protection of the laws. The Greenville County Republican Party alleges that S.C. Code § 7-11-30 violates its right to the equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution. The State treats the Greenville County Republican Party differently than it treats corporations, partnerships, and non-profit organizations. Specifically, the code section requires the Greenville County Republican Party to make a decision to use the convention method to nominate candidates for county offices only if it can reach a three-fourths supermajority threshold, but corporations, partnerships, and non-profit organizations can make decisions based on a simple majority vote. Because

of the supermajority threshold, the Greenville County Republican Party cannot opt out of the open primary system.

As a result of S.C. Code § 7-11-30, the Greenville County Republican Party has suffered an actual or threatened injury, there is a causal connection between the injury complained of and the challenged action, and the injury can be redressed by a favorable decision. The Greenville County Republican Party suffers an actual or threatened injury because the unequal treatment makes it harder for it to reach the supermajority threshold to use the convention method, and that causes its candidates for county office to be nominated in an open primary conducted by the government.

Next, there is a causal connection between the injury complained of and the challenged action. The injury (being forced into an open primary) is caused by the code section requiring the Greenville County Republican Party to reach a three-quarters supermajority threshold. Third and finally, the injury can be redressed by a favorable decision. This Court can declare that S.C. Code § 7-11-30 is unconstitutional on its face and enjoin the Defendants from requiring the Greenville County Republican Party from having to reach a supermajority threshold to opt out of the open primary method of nomination.

51

## C.

In addition, the Greenville County Republican Party has standing to prosecute a claim for a violation of its constitutional right to the freedom of political association. The Greenville County Republican Party's associational rights are violated in two ways by the election laws. First, S.C. Code § 7-11-30 interferes with the internal operations of the Greenville County Republican Party. Second, the election laws of South Carolina require the Greenville County Republican Party to conduct, pay for, and certify an open primary for municipal offices in which Democrats vote in the primary.

There is a case that is directly on point in the Fourth Circuit that clearly holds that the Greenville County Republican Party has standing to prosecute a freedom of political association claim. *Miller (I)*, 462 F.3d 312. In *Miller v. Brown (I)*, the Virginia Republican Party was not a party to the lawsuit. Instead, the lawsuit was brought by the 11th Senatorial District Republican Committee. The Republican Committee had control over the candidate filing and nomination of just *a single* state senate district in Virginia. The *Miller (I)* Court held that the 11th Senatorial District Republican Committee had standing to prosecute a violation of its right to the freedom of political association.

52

The *Miller (I)* Court held that the district committee had standing because the mere "allegation of having to associate with members of the other party during their candidate-selection process unquestionably pleads a constitutional injury." *Miller (I)*, 462 F.3d at 316. The Court then said that "the mere existence of the open primary law causes these decisions to be made differently than they would absent the law, thus meeting the standing inquiry's second requirement of a causal connection between the plaintiffs' injuries and the law they challenge." *Miller (I)*, 462 F.3d at 318. Third, the Court said that it can redress the injury by a favorable court decision because "a favorable court decision in this case would allow the plaintiffs to exclude Democrats from participating in their primary and thus eliminate their alleged injuries." *Id.* at 318.

### D. Injuries

In the case *sub judice*, the Greenville County Republican Party alleges that its forced association with members of the Democratic Party, and other rivals during the candidate-selection process violates the Greenville County Republican Party's right of free association under the First Amendment to the U.S. Constitution. So, the injury component of standing is satisfied. The definite and concrete injuries that the Plaintiff suffers to its associational rights, due to the state's open primary laws, are as follows:

53

a) The Greenville County Republican Party conducts the City of Greenville Republican Party municipal primary, including the municipal primary on June 14, 2011. However, officers of the Greenville County Democratic Party voted in the June 14, 2011, City of Greenville Republican Party municipal primary while they were sitting officers and other political rivals voted in the primary;

b) The Greenville County Republican Party pays for the City of Greenville Republican Party municipal primary, including the June 14, 2011, municipal primary. The state saves money by making the Greenville County Republican Party pay for the primary, and at the same time, the state allows the political rivals of the Greenville County Republican Party to vote in the primary and select the leadership of the Greenville County Republican Party;

c) The Greenville County Republican Party counts the votes and certifies the winner of the municipal primary to the appropriate governmental agency. When determining who to certify as the winner of the primary, the Greenville County Republican Party is required by law to count the ballots cast by the officers and candidates of the Democratic Party and other rival political parties;

d) The Greenville County Republican Party hears any election contests for the municipal primary. If a candidate were to challenge the validity of the ballots cast by the officers and candidates of the Democratic Party, the Greenville County Republican Party is forced by the state's open primary laws to count those ballots;

e) The Greenville County Republican Party hears any election contests for county-wide, or less than county-wide primaries conducted by the government. S.C. Code § 7-17-530. Again, if a candidate were to challenge the validity of the ballots cast by the officers and candidates of the Democratic Party, the Greenville County Republican Party is forced by the state's open primary laws to count those ballots.

## E.

Next, the Greenville County Republican Party meets the causal connection requirement because the municipal primary, by law, is an open primary and "the mere existence of the open primary law causes these decisions to be made differently than they would absent the law, thus meeting the standing inquiry's second requirement of a causal connection between the plaintiffs' injuries and the law they challenge." *Miller (I)*, 462 F.3d at 318. Third, the Greenville County Republican Party's injury can be redressed because "a favorable court decision in this case would allow the

55

plaintiffs to exclude Democrats from participating in their primary and thus eliminate their alleged injuries." *Miller (I)*, 462 F.3d at 318. This Court can declare as unconstitutional the code sections requiring the Greenville County Republican Party to allow everyone to vote in the municipal primary. Therefore, the Greenville County Republican Party clearly has standing to prosecute a freedom of political association claim according to the *Miller (I)* decision.

### F. *Marshall v. Meadows*

The District Court cites and relies heavily on the case of *Marshall v. Meadows*, 105 F.3d 904 (4th Cir. 1997) in its Opinion and Order dismissing the case. However, *Marshall* is inapplicable to the facts of this case and completely distinguishable to the Greenville County Republican Party's case. In *Marshall*, the plaintiffs were _two individuals_ who sued _in their individual capacity_ and attempted to prosecute a claim on behalf of the Republican Party. The _former_ Chairman of the Republican Party was a plaintiff, but he was _not suing in his official capacity_ as the Chairman of the Virginia Republican Party. He was suing as an individual elector. In *Marshall*, no Republican Party organization was a plaintiff – no county party, no district party, and no state party. The Court held that individuals do not have standing to assert a freedom of political association claim on behalf

56

of an organization. In the case *sub judice*, the freedom of political association claim is being prosecuted by a political party organization, the Greenville County Republican Party – which conducts and pays for the municipal primaries and certifies the winner of that primary, and in addition, nominates candidates for county office.

## G. The District Court's Discussion of the Party Rules.

In the District Court's Opinion and Order, the court relied on the *Marshall* decision, and held that the Greenville County Republican Party does not have standing unless the South Carolina Republican Party issues a policy or rule that prohibits Democrats from voting in the Republican Party primary. This holding was an error as the *Marshall* decision does not state what the District Court asserts, and this issue of rulemaking was already decided by the District Court Judge previously assigned to the case.

First, the *Miller (I)* Court said that a local district committee of the Virginia Republican Party had standing because of the mere "allegation of having to associate with members of the other party during their candidate-selection process unquestionably pleads a constitutional injury." *Miller (I)*, 462 F.3d at 316. That's it. There is no further analysis needed by this Court. The *Miller (I)* decision was decided after the *Marshall* decision and the *Miller (I)* decision takes precedence. The *Miller (I)* decision does not rest on

57

the State political party passing a certain policy position, but instead, it rests on the allegations of the local district political party.

Second, this issue of rulemaking was already decided by the District Court in a previous Opinion and Order (March 30, 2011). JA252-253. The Opinion and Order dismissing the case (August 30, 2013) took a position contrary to the previous decision (March 30, 2011). The South Carolina code prohibits the South Carolina Republican Party from issuing any party rule that "conflicts" with "the laws of this State." S.C. Code § 7-11-20. The Virginia Republican Party was not under any similar legal impediment, or subject to a similar state statute. In the first round of motions for summary judgment, the court held that the South Carolina Republican Party was prohibited from issuing any policies or rules that prevent Democrats from voting in the Republican Party primary.  The District Court held that:

> The party rules which the Plaintiffs wish to adopt would directly conflict with multiple provisions of Title 7 of the South Carolina Code of Laws … Any party rule attempting to disallow a qualified elector whose name appears on the list provided to a precinct by the election commission from voting in the primary, or attempting to remove an elector's name from the list, would contradict State law. The plain language of section 7-11-20 simply does not allow parties to choose the use the primary method of nomination to operate closed primaries.

58

JA252. The District Court should not have contradicted the previous ruling of the District Court. The Defendants' arguments on this topic, and the District Court's dismissal, require the South Carolina Republican Party to disregard the previous order of the District Court.

Next, S.C. Code § 7-11-20 prohibits the South Carolina Republican Party from issuing any rules that conflict with the laws of South Carolina. It is a crime to violate any of the election laws found in Title 7 of the S.C. Code. S.C. Code § 7-25-190 states that: "A person …  who violates any of the provisions of this title in regard to general, special, or primary elections is guilty of a felony. Upon conviction, the person must be fined not less than one hundred nor more than one thousand dollars or imprisoned not more than five years, or both." In other words, the state has made it a crime to issue a political party rule that prohibits Democrats from voting in a Republican Party primary. According to the first ruling of the District Court, the South Carolina Republican Party would expose itself to criminal liability if it passed such a rule because, according to the District Court, it is impossible to pass such a rule without violating state election laws. The Virginia Republican Party in the *Miller (I) and (II)* cases was not under threat of any criminal liability in its rule making process, so it had more flexibility. Certainly, this Court would not require the South Carolina

Republican Party to violate the criminal laws of its own state, and pass the party rules the Defendants allege must be passed in order to confer standing on the Greenville County Republican Party.

Fourth, the South Carolina Republican Party has passed a rule that prohibits cross-over voting. As such, the Defendants' argument has been rendered moot. The party rule is the *maximum prohibition* on cross-over voting that the state party can pass without running afoul of S.C. Code § 7-11-20 and possible criminal liability. The state party has passed Rule 11(c) titled "Prohibition of Crossover Voting," and it prohibits Democrats who have voted in the Democratic primary to turn around, on the same day, and vote in the Republican primary for the same office. JA411. The important point for purposes of this argument is that the South Carolina Republican Party has passed a rule to prohibit cross-over voting by Democrats – to the maximum extent allowed under the law.

Fifth, the South Carolina Republican Party has issued a platform position statement on the issue of a closed primary and this is the equivalent of the "Plan of Organization" relied upon by this Court in *Miller v. Brown (I)*, 462 F.3d 312 (4th Cir. 2006). So, the Defendants' argument is moot. The current 2012 Platform of the South Carolina Republican Party states in the section titled "Ensure the Integrity of the Election Process" that:

60

> We support allowing voters to designate a political party on their registration application. We believe political [parties] have the right to choose their nominees; therefore, we support primaries that are only open to registered voters of that political party.

JA578, 580-581, 585, 587-588. The South Carolina Republican Party has already issued the Plan of Organization (Party Platform) that the District Court held the state party needed to pass in order for the Greenville County Republican Party to have standing. As such, the District Court committed an error of law when it held the Greenville County Republican Party did not have standing to assert its associational rights.

### H.  The District Court's Decisions Regarding the City of Greenville.

In the Opinion and Order dismissing the Greenville County Republican Party's claims for lack standing, the District Court held that there was a lack of a causal connection between the injury and the Defendants because the injury to the Greenville County Republican Party was actually caused by the City of Greenville deciding to hold elections for public office. This holding was an error, and it contradicted the August 22, 2012, District Court Order granting the City of Greenville Municipal Election Commission's motion to dismiss. JA367. In that Order, the District Court made a finding of fact that there is "no evidence or allegation before the Court that the Municipal Election Commission has ever conducted,

61

supervised, sponsored, or reviewed the conduct of the political party primaries. There is no evidence or allegation that it intends to do so in the future. There is likewise no evidence or allegation of the Municipal Election Commission being involved in political party conventions." JA368-369. In addition, the court made a conclusion of law stating: "There is no provision in either the S.C. Code or the City of Greenville Municipal Code to authorize the Municipal Election Commission to conduct, supervise, review or pay for any political party's primary or convention." JA369. Finally, the District Court issued an order modifying its previous two Opinions and Orders: "IT IS FURTHER ORDERED that any language regarding political party primaries for the municipal offices for the City of Greenville, contained in the Court's Opinion and Order dated March 30, 2011 (Docket #54) and in the Court's Opinion and Order dated July 18, 2011 (Docket #66), shall be construed in a manner consistent with this Order." JA370.  It was clearly an error for the District Court to contradict the District Court's previous order. In addition, it is S.C. Code §§ 5-15-80 and 7-13-15, that require the Greenville County Republican Party to conduct the municipal primary – not the City of Greenville.

**ISSUE SEVEN: William Mitchell has Standing to Assert His Right to the Equal Protection of the Laws.**

Mr. William Mitchell claims that the state election laws violate his right to the equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution. Mr. Mitchell is an elector in the City of Greenville and in the County of Greenville. The state treats him differently from the electors who live in the County of Greenville (outside of the city limits). When he votes in the City of Greenville Republican primary, the primary is conducted by the Greenville County Republican Party. The electors who live in the County have their elections conducted only by the government. The state treats municipal electors differently than non-municipal electors. Mr. Mitchell is not advancing any claim regarding a right to the freedom of political association.

The District Court summarily dismissed William Mitchell's claims for lack of standing in two sentences, with no analysis. JA733. Instead, the District Court simply adopted its holdings regarding the Greenville County Republican Party and applied them summarily to William Mitchell. The District Court committed an error of law because Mitchell's standing is different than the standing of the Greenville County Republican Party. Mitchell's standing is based on his rights under the Equal Protection Clause.

63

The District Court analyzed Mitchell's standing based on the associational rights of the Greenville County Republican Party. That was an error.

Mr. Mitchell has standing since he has suffered an actual or threatened injury. He has voted in the municipal primary conducted by the Greenville County Republican Party. He was treated differently than electors who live in the county who got to vote only in primaries conducted by the government. Second, there is a causal connection between the injury complained of and the challenged action because the state election laws are the cause of Mr. Mitchell having to vote in a municipal primary conducted by the Greenville County Republican Party. S.C. Code §§ 5-15-80 and 7-13-15. Third, and finally, the injury can be redressed by a favorable decision. This Court can declare unconstitutional the election laws that require the Greenville County Republican Party to conduct the municipal elections and issue an injunction preventing the government from forcing the Greenville County Republican Party to conduct the municipal primary.

## CONCLUSION AND REQUEST FOR RELIEF

In conclusion, for all of the reasons explained herein, summary judgment should be granted in favor of the Greenville County Republican Party and William Mitchell for their facial challenges to the election laws. The District Court's decision granting summary judgment in favor of the

Defendants and denying the Plaintiffs' motion for summary judgment should be reversed. Finally, the District Court's decision dismissing the claims for lack of standing should be reversed and vacated and the case should be returned to the District Court for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Appellants request oral argument in this case because of the importance of the issues raised in this appeal.

Respectfully Submitted,

*/s/ Samuel D. Harms, III*

Samuel D. Harms, III
HARMS LAW FIRM, PA
33 Market Point Drive
Greenville, SC 29607
(864) 277-0102

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 13-2170        **Caption:** Greenville Rep. Party Committe, et al. v Billy Way, et al.

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

☑ this brief contains ____13,871____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☑ this brief has been prepared in a proportionally spaced typeface using
MS Word 2010 _____ [*identify word processing program*] in
Times New Roman, 14 point _____ [*identify font size and type style*]; **or**

☐ this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Samuel D. Harms _____

Attorney for Greenville Rep. Party Comm, et al.

Dated: 1/27/2014 _____

# CERTIFICATE OF SERVICE

I certify that on  January 27, 2014   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

ANDREW F. LINDEMANN
DAVIDSON & LINDEMANN, PA
1611 Devonshire Drive, Second Floor
Columbia, SC 29204
(803) 806-8222

HARRY M. KRESKY
LAW OFFICE OF HARRY KRESKY
505 West 54th Street, Suite 419
New York, NY 10019
(212) 581-1516

FLETCHER N. SMITH, JR.
LAW FIRM OF FLETCHER N. SMITH, JR.,
LLC
112 Wakefield Street
Greenville, SC 29601
(864) 232-6541


/s/ Samuel D. Harms                              1/27/2014
_____          _____
             Signature                                          Date